| |
|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-2(c) <br> **CHAD B. FRIEDMAN** <br> **RAVIN GREENBERG PC** <br> 101 Eisenhower Parkway <br> Roseland, New Jersey 07068 <br> (973) 226-1500 <br> Attorneys for Petitioning Creditors |
| In Re: <br><br> EDWARD D. FAGAN <br><br> Debtor. |

Chapter 7 (Involuntary Petition)

Case No.: 06-14863 (NLW)

Judge: Novalyn L. Winfield

**OPPOSITION TO THE DEBTOR'S MOTION TO
DISMISS OR STRIKE HIS INVOLUNTARY CASE**

Andrew Decter, Edith Edry and Allen Tavel (the "Petitioning Creditors") by and through their attorneys, Ravin Greenberg PC**,** hereby submit the following Opposition to the Debtor's Motion to Dismiss or Strike His Involuntary Case. For the reasons set forth herein, the Debtor's Motion should be denied.

**BACKGROUND**

1. On June 1, 2006 (the "Filing Date"), the Petitioning Creditors filed an involuntary petition (the "Petition") for relief under chapter 7, title 11 of the United States Code (the "Bankruptcy Code" or "Code") against Edward D. Fagan (the "Debtor"). Specifically, the Petition was filed pursuant to section 303(a) of the Bankruptcy Code.

2. Upon information and belief, the Debtor is or was a practicing attorney in New York and New Jersey.

1

3. Each Petitioning Creditor holds a judgment against the Debtor as follows: (i) Andrew Decter ("Decter") obtained a judgment against the Debtor, originating out of certain loan defaults, in the amount of $760,919.31; (ii) Edith Edry ("Edry"), the Debtor's former employee, obtained a judgment against the Debtor, and the Debtor's law firm, Fagan & Associates, as a result of the Debtor's failure to pay her due salary, in the amount of $247,633.42; and (iii) Allen Tavel ("Tavel"), the Debtor's former client, obtained a judgment against the Debtor in the amount of $3,441,062.00 after the Debtor failed to represent his interests in a car injury case. The judgment itself is the result of a suit instituted by Tavel against the Debtor for legal malpractice – the Debtor had failed to carry malpractice insurance.

4. The Petition was duly served upon the Debtor, via personal service, in the State of New Jersey.

### The Debtor's Motion to Dismiss His Petition

5. On June 30, 2006, the Debtor filed a Motion to Dismiss or Strike his Petition (the "Motion to Dismiss").

6. In support of his Motion to Dismiss, the Debtor espouses two distinct jurisdictional arguments.

7. The Debtor first argues that, as a result of his failure to fulfill the credit counseling provisions of section 109(h) of the Bankruptcy Code, he is not eligible to be a debtor under the Bankruptcy Code, and that therefore the Petition must be stricken or dismissed.

8. In his second argument, the Debtor maintains that the Petition should be dismissed under applicable rules of venue. In support thereof, the Debtor attaches his own certification regarding his residency and the location of his principal assets. According to the statements made

in his own certification, the Debtor does not reside in New Jersey.  Instead, the Debtor maintains that he resides or is domiciled in Florida.  The Debtor also certifies that his principal asset, his law firm, is located in New York.

9.      With respect to the Debtor's first argument under section 109(h) of the Bankruptcy Code, for the reasons articulated below, the Petitioning Creditors request that this Court deny the Debtor's requested relief, and reject his arguments.

10.     With regard to the Debtor's second argument over correct venue, the Petitioning Creditors request that the Court deny the Debtor's Motion to Dismiss and allow the Petitioning Creditors additional time to take necessary discovery in order to determine correct venue in which to administer this case, or grant the parties additional time to come to a consensual resolution regarding appropriate venue.

### **The Debtor's Arguments Under Section 109(h) Should be Overruled**

11.     One of the amendments enacted by BAPCPA was a new eligibility requirement for individual debtors.  Section 109(h)(1) states that, as a general rule, all individual debtors must receive an appropriate briefing during the 180 days preceding the date of filing. The statute indicates which agencies are eligible to provide such a briefing and, in very general terms, what such a briefing should entail. It is the clear expectation of the statute that all individual debtors receive such a briefing *prior* to filing. Section 521(b)(1) of the Bankruptcy Code requires "an individual debtor to file a certificate from the agency that provided the debtor's services under § 109(h) describing the services provided to the debtor . . . " *See* 11 U.S.C. §§ 109(h)(1) and 521(b)(1) (West 2006).

12.     The Debtor argues that his failure to complete a credit counseling course pursuant to the terms of section 109(h) of the Bankruptcy Code, constitutes a jurisdictional defect, depriving this Court of jurisdiction over his case, and mandates a dismissal or striking of his Petition.

13.     Based upon a plain reading of section 109(h)(1), however, the Debtor's argument, in the context of an involuntary bankruptcy petition, is without merit.

14.     The Debtor cites to a variety of cases which support the proposition that an individual who files a *voluntary petition* under the Bankruptcy Code must satisfactorily complete the credit counseling requirements of section 109(h)(1). Those cases are inapplicable to the case at bar, which was commenced as an *involuntary petition* under section 303(a) of the Bankruptcy Code, and the Debtor ignores a plain reading of the statute.

15.     The proof for the Petitioning Creditors' position, so to speak, is in the pudding. Section 109(h)(1) specifically provides:

> "Subject to paragraphs (2) and (3), and notwithstanding any other provision of this section, an individual may not be a debtor under this title unless such individual has, during the 180-day period preceding the date of <u>*filing of the petition by such individual*</u>, received from an approved nonprofit budget and credit counseling agency described in section 111(a) an individual or group briefing (including a briefing conducted by telephone or on the Internet) that outlined the opportunities for available credit counseling and assisted such individual in performing a related budget analysis." (<u>*emphasis*</u> added).

16.     The statute itself, by its own terms, and by explicitly incorporating the term "filing of the petition by such individual," clearly maintains an intent and directive to apply only to those debtors who have filed their own voluntary petitions. Conversely, the statute would not apply when an involuntary petition is filed against a debtor, because the petition was not filed "by such individual."

4

17. It is the Court's duty to follow the plain meaning of a statute when it is clear on its face, such as in this circumstance, and furthermore, it is the Court's obligation to look at the context of statute to be interpreted, including its policy and design: "It is our duty 'to give effect, if possible, to every clause and word of a statute.' " *TRW, Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001) (quoting *Montclair v. Ramsdell,* 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883)); *see also Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990) ("In determining the meaning of the statute, we look not only to the particular statutory language but to the design of the statute as a whole and to its object and policy"); *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1818, 100 L.Ed.2d 313 (1988) ("In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole").

18. If the Debtor's unfounded arguments are, for any reason, deemed meritorious by this Court, the entire scheme, policy and process of section 303(a) and its related statutes become obsolete.

19. Under such a result, there would be no possibility for any creditor to ever meaningfully file an involuntary petition against an individual debtor, because, under the theory espoused by the Debtor, a debtor could simply refuse to attend a credit counseling course, thereby divesting a bankruptcy court of jurisdiction, which, in turn, would be obligated to dismiss the case, thereby mooting the entire process. Restated, a decision by this Court to ratify the Debtor's arguments under section 109(h)(1) would simultaneously, in one painful blow, crumble the entire historical and future statutory foundations of the involuntary petition, and seriously embarrass the enforcement of bankruptcy law.

20. Petitioning Creditors' diligence in investigating recent case law reveals no prior case whatsoever in any circuit dealing with the interaction between sections 109(h) and 303(a). Therefore, the issue presented to this Court may be of first impression, not only within the Third Circuit, but also throughout the entire country.

21. Based upon a plain reading of the statute, and upon consideration of the policy reasons set forth above, Petitioning Creditors hereby request that the Debtor's Motion to Dismiss be denied.

### This Petition Should Not be Dismissed Under the Debtor's "Venue" Arguments

22. The Debtor also argues that venue in the District of New Jersey is incorrect, and that therefore, the Petition should be dismissed. In opposition thereto, Petitioning Creditors submit that the correct relief, if venue is ultimately adjudged incorrect, is to simply transfer the case to another venue, instead of dismissing it outright.

23. In considering whether to dismiss an involuntary petition, courts generally look first as section 303(b)(1), in order to focus on the eligibility of the petitioning creditors who file an involuntary petition, and, then, at section 303(h), in order to focus on the eligibility of the debtor, as an individual who is "not paying such debts as such debts become due."

24. In his Motion to Dismiss, the Debtor does *not* dispute the Petitioning Creditors' eligibility to file the within Petition, nor does he deny that he is not paying his debts as they become due. Both issues are addressed below for the Court's reference, but each should be deemed substantively moot, and neither was raised by the Debtor as a defense to the relief requested under the Involuntary Petition.

25. Section 303(b)(1) of the Bankruptcy Code states in pertinent part: (b) an involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title . . . (1) by three or more entities, each of which is . . . a holder of a claim against such person that is *not contingent as to liability or the subject of a bona fide dispute . . .*" 11 U.S.C. §303(b)(1) (West 2006) (*emphasis* supplied).

26. In this case, under section 303(b)(1), each Petitioning Creditor, as the holder of a judgment, has a claim which is not contingent and not subject to a bona fide dispute.

27. "Determination of whether a bona fide dispute exists involves a burden-shifting test. Petitioning creditors bear the burden of establishing a prima facie case that no bona fide dispute exists." *In re Elsa Designs, Ltd.,* 155 B.R. 859, 863 (Bankr.S.D.N.Y.1993); *In re Rimmell,* 946 F.2d 1363, 1365 (8th Cir.1991). "The burden then shifts to the alleged debtor to demonstrate that a bona fide dispute does exist." *In re Audio Visual Workshop, Inc.,* 211 B.R. 154 (Bankr.S.D.N.Y.1997).

28. The term *a bona fide dispute* has been defined by the Third Circuit: "If there is a genuine issue of a material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed . . . [S]ubstantial factual and legal questions raised by debtor preclude finding of involuntary bankruptcy." *B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.,* 865 F.2d 65, 66-67 (3d Cir.1989).

29. Courts generally hold that unstayed judgments cannot be controverted by a debtor as the subject of a bona fide dispute. *In re Raymark Industries, Inc.,* 99 B.R. 298, 300 (Bankr.E.D.Pa.1989) (instructing that an unstayed judgment not subject to a bona fide dispute); *In re Drexler,* 56 B.R. 960 (Bankr.S.D.N.Y.1986) (determining that a claim based on an

7

unstayed judgment pending appeal was not subject to a bona fide dispute); *In re Galaxy Boat Mfg. Co.,* 72 B.R. 200, 202 (Bankr.D.S.C.1986) (opining that although the debtor appealed a default judgment entered in state court, the claim was not subject of a bona fide dispute); *In re Smith,* 123 B.R. 423, 424 (Bankr.M.D.Fla.1990), *aff'd,* 129 B.R. 262 (M.D.Fla.1991) (holding that since the bank was holder of state court judgment against the debtor, the debt was not subject to a bona fide dispute); *In re Schiliro,* 64 B.R. 422, 425 (Bankr.E.D.Pa.1986) (finding that a claim against debtor which had been reduced to a confessed judgment and was not contingent or subject to a bona fide dispute). *See also Concrete Pumping Service, Inc. v. King Constr. Co.,* 943 F.2d 627, 629 (6th Cir.1991) (noting that contested involuntary petition did not involve a bona fide dispute as petitioner's claim had been reduced to judgment pre-petition); *In re Everett,* 178 B.R. 132, 140 (Bankr.N.D. Ohio 1994) (unappealed, unstayed final judgment not subject to a bona fide dispute).

30.    In the case at bar, the Petitioning Creditors' judgments have not been stayed, are not subject to any dispute whatsoever, and the Debtor, in fact, does not appear to dispute their claims at all.

31.    Under section 303(h)(1), where a petition is controverted, a court may order relief against a debtor where the debtor is not paying debts as they become due. 11 U.S.C. §303(h)(1) (West 2006).

32.    The language of § 303(h)(1) "is not defined in the Code and the legislative history is not very helpful." *In re All Media Properties, Inc.,* 5 B.R. 126, 142 (Bankr.S.D.Tex.1980), *aff'd,* 646 F.2d 193 (5th Cir.1981). As a consequence, "courts have been unable to arrive at a uniform standard for determining what constitutes a failure to pay debts generally." *In re Midwest Processing Co.,* 41 B.R. 90, 100 (Bankr.D.N.D.1984).

8

33. Most courts have engaged in a mechanical analysis involving the review of numerous factors. *See, e.g, In re Knoth,* 168 B.R. 311, 317 (Bankr.D.S.C.1994) (factors to consider are "(1) the timeliness of payments on past due obligations; (2) the amount of debts long overdue; (3) the length of time during which the debtor has been unable to meet large debts; (4) any reduction in the debtor's assets; and (5) the debtor's deficit situation"); *In re H.I.J.R. Properties Denver,* 115 B.R. 275, 277 (D.Colo.1990) (listing as factors the number of debts, the amount of the delinquencies on said debts, the materiality of nonpayment, and the nature of the debtor's conduct with respect to his financial affairs).

34. Courts seem to be uniform in their belief that they "should not restrict . . . [themselves] solely to factors included in a mechanical test." *See, e.g., Midwest Processing,* 41 B.R. at 100 ("Accordingly, courts must be sensitive to the unique circumstances involved in each involuntary proceeding."); *H.I.J.R. Properties,* 115 B.R. at 277 (courts should "look to the totality of the circumstances existing when the petition [was] filed"); *All Media Properties, Inc.,* 5 B.R. at 142 ("test for involuntary petitions was adopted not to restrict and limit the involuntary process but was included to allow more flexibility").

35. In this case, the Petitioning Creditors are the holders of three separate judgments, and each debt gravitates towards a showing that the Debtor is clearly not paying his debts as they become due: The first judgment originates out of arrearages due on a large loan; the second judgment is for past due salary; and the third judgment arises out of a malpractice suit for which the Debtor did not carry malpractice insurance.

36. Each judgment, in its own right, reflects the Debtor's failure to pay his debts as they come due. Together, the circumstances behind the judgments thematically join forces to

display an overwhelming and unfortunate pattern of debts, both ordinary and extraordinary, not being paid.

37.     Therefore, the within Petition should not be dismissed, since the Petitioning Creditors meet the requisite terms of eligibility, and the Debtor clearly belongs in an involuntary proceeding.

### The Question of Venue Should Be Determined According to the Facts of this Case

38.     Once it is clear that an involuntary petition should not be dismissed, a court may consider the provisions of 28 U.S.C. §1408(1), a statute which governs venue. A court should also consider the provisions of 28 U.S.C. §1404, and its case law progeny, for use as guidance when a request to transfer venue is made.

39.     28 U.S.C. §1408 sets forth the judicial standards to be considered in a venue determination in bankruptcy proceedings, and provides that the correct venue follows a debtor's domicile, residence, principal place of business, or principal assets. 28 U.S.C. §1408(1) (West 2006).

40.     Courts have held that "[e]ssentially five factors should be considered in determining whether venue should be transferred: (1) proximity of creditors of every kind to the court; (2) proximity of the debtor to the court; (3) proximity of witnesses necessary to administration of the estate; (4) location of assets and (5) economic administration of the estate." *Matter of Reynolds*, 13 B.R. 658, 660 (Bankr.D.Ga. 1981); *see also In re Moss*, 249 B.R. 411 (Bankr.N.D.Tex. 2000).

41.     To transfer, a Court must find that a transfer would be "in the interest of justice or for the convenience of the parties." *In re Moss*, at 425. The most important consideration

among the factors highlighted above directs query at "whether the requested transfer would promote the economic and efficient administration of the estate." *Id*.

42. In the case at bar, the correct venue of this case will be determined by the facts. Petitioning Creditors are requesting a short adjournment of this issue in order to conduct an investigation into the Debtor's affairs. Counsel to the Debtor has agreed to an adjournment to conduct necessary discovery.

43. It is necessary to inform the Court that, upon information and belief, the Debtor spends a significant amount of time abroad or oversees, and that, therefore, conducting discovery may take some time.

44. Counsel to the Debtor has agreed to Petitioning Creditors requests to take discovery.

For the foregoing reasons, as explicitly set forth above, and as set forth in the Office of the United States Trustee's Opposition, the Debtor's Motion to Dismiss should be denied.

        RAVIN GREENBERG PC,
        Counsel to the Petitioning Creditors

        By: /s/Chad B. Friedman
        Chad B. Friedman

Dated: August 3, 2006