UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: | . Case No. 06-14863 |
| | . |
| EDWARD D. FAGAN, | . |
| | . |
| | . 50 Walnut Street |
| | . Newark, New Jersey 07102 |
| Debtor. | . |
| | . August 14, 2006 |
| . . . . . . . . . . . . . . . | . 9:54 a.m. |

TRANSCRIPT OF MOTION TO STRIKE OR DISMISS
BEFORE HONORABLE NOVALYN L. WINFIELD
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Levitt & Slafkes, P.C.<br>By: BRUCE LEVITT, ESQ.<br>76 South Orange Avenue<br>Suite 305<br>South Orange, NJ 07090 |
| For Petitioning Creditors: | Ravin Greenberg, P.C.<br>By:  CHAD B. FRIEDMAN, ESQ.<br>101 Eisenhower Parkway<br>Roseland, NJ 07068 |
| For the Trustee: | OFFICE OF THE U.S. TRUSTEE<br>By:  PETER D'AURIA, ESQ.<br>Newark, NJ |
| Audio Operator: | Nelson Dos Santos |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

_____

J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-Mail:  jjcourt@optonline.net

(609) 586-2311   Fax No.   (609) 587-3599

1     THE COURT:  How about Edward Fagan while I'm waiting
2 for the other folks?
3     Appearances.
4     MR. LEVITT:  Bruce Levitt for the debtor.
5     MR. FRIEDMAN:  Chad Friedman from Ravin Greenberg for
6 the petitioning creditors.
7     MR. D'AURIA:  Good morning, Your Honor, Peter D'Auria
8 from the Office of the United States Trustee.
9     THE COURT:  Okay.  What's this about 109H?
10    MR. LEVITT:  It's all about 109H, Your Honor.
11    Your Honor, if we could start with what we can all
12 agree on.  I think we can all agree that if this was a
13 voluntary case it would be dismissed.
14    THE COURT:  That's true.
15    MR. LEVITT:  We can also agree that there's
16 absolutely nothing in the code creating an exception for the
17 credit counseling requirement in the context and involuntary,
18 there's nothing explicit in the code. We can also agree, Your
19 Honor, that if you take a look at Section 109 and 109(h) and
20 the language that's cited in opposition to my motion, the first
21 thing you have to notice that it's in 109.  It's not in 301,
22 it's in Section 109.  301 deals with voluntary cases.  If the
23 language is only supposed to apply to a voluntary case,
24 Congress should have, could have and would have put it in
25 Section 301.  It's not in there, it's in 109.  Congress made

1  clear when they passed this new law whether we agree with it or
2  not that there's a credit counseling requirement.  I'm glad I
3  don't have to debate whether or not the credit counseling
4  requirement has any merit or it's good or bad because I
5  couldn't make that argument.  But I do know that Congress, when
6  they passed this law, put in Section 109 the section that says,
7  Who may be a debtor.
8           THE COURT:  Okay.  Well, let's think about this.
9  There's petitioning creditors desirous of filing an involuntary
10 petition against an individual, what are they supposed to do?
11          MR. LEVITT:  If a debtor can't follow --
12          THE COURT:  Coerce him down or her down to a credit
13 counseling agency, perform the credit counseling for them, get
14 the certificate and then go file the petition?
15          MR. LEVITT:  No, Your Honor, supposed to go to state
16 court, I guess.  I guess that's what Congress wanted.
17          THE COURT:  Oh, Congress didn't intend for there to
18 be an involuntary petitions against individuals?
19          MR. LEVITT:  No.  Obviously not, Your Honor.  I
20 didn't pass the law.  Your Honor, Congress said --
21          THE COURT:  What do I do with 303?
22          MR. LEVITT:  303 specifically says you can't be an
23 involuntary debtor if you can't be a voluntary debtor.  This
24 man cannot be a voluntary debtor.  Congress excluded, and it's
25 not just involuntary cases, Your Honor.  Congress excluded from

1  the bankruptcy system, all individuals who fail, refuse or
2  don't get their credit counseling.  Congress isn't saying that
3  you can't file an involuntary petition against an individual
4  who might have gotten their credit counseling, and I'll explain
5  to you how that could have happened, Your Honor.  And there are
6  various scenarios.
7          THE COURT:  Like any good law professor, I'm sure you
8  could pick up a few that would --
9          MR. LEVITT:  I'll give you a few, Your Honor.  Let's
10 say the debtor does the credit counseling, files a Chapter 13,
11 files a Chapter 7 and doesn't submit their schedules --
12         THE COURT:  Files a Chapter 11 even.
13         MR. LEVITT:  Files a Chapter 11, files a Chapter 13,
14 it ultimately gets dismissed, it was done within six months,
15 the involuntary can be filed.  No question.  Let's say the
16 individual did the credit counseling and did exactly I think
17 what Congress probably was hoping and you know, listen to the
18 credit counseling people, said you know what, this bankruptcy
19 is really going to screw up my credit so I'm not going to file,
20 but he's completed the certificate.  Creditors don't like that,
21 creditors really want him in.  Well, if he's done that course,
22 creditors can file the involuntary because the certificate is
23 there.  Your Honor, let's look at the language of 109(h).  You
24 can't take it in a vacuum.  109(h) specifically says in the
25 first line, subject to paragraphs two and three, there's no

1  exceptions in two and three, and notwithstanding any other
2  provision in this section.  An individual may not be a debtor
3  under this title unless such individual has.  It can't read it
4  without that first section.  If I read this literally, Your
5  Honor, and I follow the argument that's raised in opposition to
6  my motion, I would stand here and argue, and I would think it
7  would be a little ridiculous, but I would stand here and argue
8  and I am standing here and arguing, that in Section 109(h),
9  Your Honor, if you follow the argument, involuntary
10 bankruptcies are written out as individuals.  Because 109(h)
11 says you can't file here if you're an individual, but only the
12 individual can get the credit counseling.  So therefore if I
13 read 109(h) literally and follow the argument, involuntary
14 bankruptcies against individuals are out of the bankruptcy code
15 unless they got that certificate.  That's not what Congress
16 intended.  Congress intended to require credit counseling for
17 every individual that steps in the doors of this court.
18 Voluntary -- involuntarily doesn't matter. That's what
19 Congress said.  If Congress intended anything different, Your
20 Honor, Congress would have had to and would have put this
21 language in Section 301 not 109.  You cannot read that second
22 section dealing with the individual preceding the date of the
23 filing of the petition without reading the first part of that
24 sentence which says an individual may not be a debtor under
25 this title unless such individual has.  He can't be a debtor.

1  It's 109, it's not 301.  And there are scenarios, Your Honor,
2  where an individual can be put into bankruptcy involuntarily
3  after they got certificates, Congress doesn't want this debtor
4  here.  Whether we can debate, whether Congress knew what it was
5  doing, what the Congress intended, we can't.  We have literal
6  language that we need to apply.  There's no legislative history
7  that deals with this.  There's absolutely no case law.  We're
8  here interpreting --
9          THE COURT:  There's no reported case law.  I have
10 some sense that this is not the first time --
11         MR. LEVITT:  Your Honor, I think Mr. D'Auria would
12 tell Your Honor that they've been canvassing the country, and
13 the U.S. Trustee system is not aware of any case where this
14 issue has been presented.  Whether we're here making history
15 today, Your Honor --
16         THE COURT:  Oh, please, I've read about it in
17 journals.  I know it's been presented somewhere.  But go on, go
18 on, go on.
19         MR. LEVITT:  Your Honor, I will tell you I've had
20 academic discussions with people before this case walked into
21 my office about this issue.  But other than the academics, Your
22 Honor, I'm not aware of any case where this issue has been
23 addressed.  And again, what Your Honor is being asked to do by
24 both me and my adversaries, is to interpret -- not even to
25 interpret -- to read the language of the statute and interpret

1  it literally.  And again, if you interpret the language
2  literally in Section 109(h) where it says you can't be an
3  individual in bankruptcy unless the individual has applied for
4  this credit counseling before they file, Congress has written
5  out involuntary bankruptcies as to individuals.  We know
6  Congress didn't intend that.  I think probably what happened
7  was they missed a word or two where it says filed by or against
8  the individual.  But the reality is, Your Honor, you can't read
9  the quote literally, and uphold the argument.  And again, we
10 can look at 301, we can look at 303, but we can all agree, Your
11 Honor, that this individual, if I filed this petition for this
12 individual and there was no credit counseling certificate, the
13 U.S. Trustee and the Court would be saying to me he's out
14 because there's no credit counseling certificate.  It's no
15 different because this is an involuntary case.
16         THE COURT:  Okay.  And I assume -- with respect to
17 your argument we actually don't know whether this is the proper
18 venue or not.  I assume you would agree were I to deny your
19 request and dismiss the case that it would be appropriate to
20 have perhaps a further evidentiary hearing as to whether it
21 ought to be here or some other venue.
22         MR. LEVITT:  And I've agreed to further discovery,
23 Your Honor.  We haven't gotten to that issue.  I will note,
24 Mr. Friedman went to great lengths in his papers to justify the
25 involuntary, we haven't filed our answer yet.  I think those

1  issues are premature.  But certainly if Your Honor rules
2  against me, we are prepared to submit the discovery on that
3  issue and ultimately --
4           THE COURT:  And other issues.
5           MR. LEVITT:  And if Your Honor rules against me,
6  there could end up being a voluntary filing somewhere down the
7  road.  So I think we can put those issues off.
8           THE COURT:  Okay.  Mr. D'Auria, Mr. Friedman.
9           MR. D'AURIA:  Your Honor, following up on a couple of
10 comments from Mr. Levitt's argument, I am not aware of any
11 reported or written otherwise decision specifically addressing
12 the applicability of 109(h) in the context of an involuntary.
13 It has been discussed, it has been written about and it's been
14 much bantered about.  But I'm not aware of any opinions that
15 expressly deal with it.
16          I think the issue, Your Honor, is a little bit
17 simpler than Mr. Levitt makes out and with due respect to his
18 argument, I don't think he read enough of 109(h).  My argument
19 is, if you continue to read the rest of 109(h), the statute on
20 its face talks about petitions filed by the individual who is
21 supposed to get the credit counseling.  And I don't think you
22 can ignore that language by such individuals.  If you continue
23 to read further, the statute gives some hints as to what the
24 credit counseling is all about and the purposes for a potential
25 prospective debtor to consider their options.  I think those

1  things are important.
2          Before I continue, I'd like to put two things on the
3  record if I may, Your Honor.  We do not address the venue
4  issues with leave those to the petitioning creditors with the
5  debtor.  And more importantly, if Your Honor gets passed the
6  argument that I'm going to present, that's presented in our
7  paper and considers the applicability of 109(h), there is then
8  an issue as to whether the petition was stricken or dismissed.
9  And I will admit that bankruptcy courts around the country
10 differ and they go in both directions.  It is our position that
11 the case should be dismissed.  I have a detailed argument
12 outlined on that if Your Honor feels it's appropriate to hear
13 it.  Please advise and I'll be glad to present it.  I don't
14 believe debtor's counsel's papers take a position one way or
15 another.  It seems like they leave it up to Your Honor.
16 Suffice it to say that I don't believe we get there today, but
17 if we do, I would appreciate if I'd have an opportunity for
18 further argument.
19         But then if I could turn to the statute, Your Honor,
20 it says an individual may not be a debtor under this title
21 unless such individual has during the 180 day period preceding
22 the date of the filing of the petition by such individual
23 receive certain credit counseling.  First, the 180 days is
24 important.  This is an important sidebar, Your Honor, to our
25 statutory construction arguments because debtor's motion has

1  included with it a certification by Mr. Edward Fagan that
2  asserts -- it basically deals with the venue issues.  But in
3  two lines in Paragraph 2 it asserts that he has not received
4  credit counseling in the 60 days.  So even if Your Honor was to
5  get passed my argument and consider the applicability of
6  109(h), I don't think Your Honor could do it on the facts
7  before Your Honor today.  Certification only addresses 60 days,
8  the statute requires review of 180.  I think the factual record
9  would have to be augmented.  But getting back to the statute,
10 some of the things that have been bantered about in the
11 journals and in articles, is that Congress missed something.
12 Debtor's counsel said that Congress may have missed a word.  I
13 don't think they missed anything.  For every ounce of argument
14 that they missed something, there's a pound of argument that
15 they got it exactly right.  When they said clearly, succinctly
16 and expressly filing the petition by such individual, they were
17 talking about voluntary petitions.  And new 109(h) on its face
18 doesn't address nor apply to an involuntary petition.
19         I think this is consistent with some of the other
20 amendments to the code.  Some of the cases, Your Honor, that
21 grapple with 109(h) and what to do with it in the circumstance
22 where it's not satisfied look to how it may or may not play
23 with other sections of the code.  And two sections that they
24 deal with are 362(c)(3) and (4).  And in those sections they
25 talk about cases, they talk about individuals, they talk about

1   cases by or against, by or against such individual.  The
2   drafters that wrote 109(h) were aware arguably of involuntary
3   petitions.  And in 109(h), they dealt with it very cleanly,
4   very neatly and very clearly by saying the filing of petition
5   by such individual.
6          We would argue, Your Honor, that the statute is very
7   clear on its face, you just have to read all of it, and I would
8   respectfully cite <u>Perrin v. The United States</u>, 44 USC 37 at 42.
9   "Fundamental canon of statutory construction is that unless
10  otherwise defined words would be interpreted taking their
11  ordinary contemporary common meaning."  The statute is clear on
12  its face.  Common meaning petition filed by such individual by
13  the debtor.  If we keep reading the statute and consider the
14  purpose of the statute, towards the end of 109(h) budget and
15  credit counseling that outline the opportunities for available
16  credit counseling and assisted such individual in performing a
17  related budget analysis.  I think it's fair to argue that the
18  purpose of the statute like I said earlier, is to give a debtor
19  options before they jump into bankruptcy and to educate them as
20  to what the ramifications of the bankruptcy filing is.  Those
21  are not the purposes of Section 303.  And these two purposes do
22  not necessarily conflict with each other, they're different.
23  303 is an involuntary petition, creditors seeking to preserve
24  assets, pursue creditor's rights.  109(h) is designed to take
25  an individual debtor and require them to consider their options

1  before they go ahead and file bankruptcy.  Not necessarily
2  conflicting.  I'd also cite for Your Honor House Report Number
3  103-31.  A legislation's credit --
4         THE COURT:  And you're citing this because you think
5  the language is clear and unambiguous?
6         MR. D'AURIA:  I'm citing it to go to the purpose of
7  the statute, Your Honor.  The purpose of the statute in my
8  opinion, doesn't conflict nor address 303.  That's what I'm
9  citing it for.
10        THE COURT:  I mean I would only consider it if it was
11 ambiguous.  Why am I considering this if it's your position
12 this language is clear and unambiguous?
13        MR. D'AURIA:  Only because it helps Your Honor know
14 that the purpose was to -- you don't have to.  Because all you
15 do is -- I've read it twice, we can read it a third time.
16        THE COURT:  No thank you.
17        MR. D'AURIA:  But the purpose of citing that was
18 merely to highlight that the purpose of the statute was to get
19 debtor's counseling on their options.  And the statute didn't
20 miss anything when it didn't specifically address involuntary
21 petition.
22        So with that, Your Honor, I conclude with saying all
23 you have to do is read the entire 109(h) and see it's clear
24 does not apply to an involuntary petition.
25        THE COURT:  Mr. Friedman.

1           MR. FRIEDMAN:  Thank you, Your Honor.  Our papers
2  substantially outline our position here.  Our position is
3  similar to that of the U.S. Trustee's which is that the statute
4  is clear on its face based on a simple reading.  I don't see
5  anything anywhere else in the code, and like other parties
6  here, I don't see any other cases that deal with the issue, so
7  we're looking at this from a perspective of a new one.  I'm not
8  going to read the statute here all over again because that's
9  been done.  The only thing that I suppose has not been
10 addressed is typically just by way of example, typically in an
11 involuntary petition, when a debtor does not do the things he
12 is required to do under the code, it does not necessarily mean
13 that a bankruptcy petition is dismissed.  For example, a debtor
14 who is in an involuntary, if they don't file schedules or state
15 their financial affairs, that does not warrant dismissal of the
16 case, what usually happens --
17          THE COURT:  Right, trustee can --
18          MR. FRIEDMAN:  -- the trustee files it on their
19 behalf --
20          THE COURT:  So here would the trustee take the credit
21 counseling for the debtor?
22          MR. FRIEDMAN:  Well, I don't know, I don't know how
23 it would play out but I'm addressing the argument that Mr.
24 Levitt made that a debtor under a voluntary Chapter 7 could not
25 be a debtor -- anyway, you understand my argument in that the

1   two chapters differ in the obligations of a debtor in an
2   involuntary versus a voluntary differ as well.
3          Other than that, the venue argument we can address
4   later if we get over this hump.  I think Mr. D'Auria has
5   addressed everything that we had intended to address.  I don't
6   want to take up the Court's time by going over that again, by
7   reading the statute over again.  So I thank you, Your Honor.
8          THE COURT:  No.  And I think both parties' position
9   is clear.  And Mr. Levitt, unless you have something to add
10  that's different from what you originally said, don't bother.
11         MR. LEVITT:  Your Honor, I'm not planning on beating
12  a dead horse.  I do want to address though Mr. Friedman's
13  comments about if this was an involuntary and the debtors
14  didn't do -- well, that's after you get past the jurisdictional
15  issue.  You've got to have the jurisdiction over the case first
16  and all of those Chapter 13 cases that I cited dealt with that
17  issue, how you can't cure this problem later because the Court
18  doesn't have jurisdiction to start with.  And I would submit to
19  Your Honor that under 109, this debtor cannot be a debtor
20  because there's no certificate.  We don't ever reach those
21  issues because this Court has no jurisdiction over this case.
22         THE COURT:  Okay.
23         MR. FRIEDMAN:  That's the end of the involuntary
24  petition as to individuals.
25         MR. D'AURIA:  Your Honor, I would only add that

1  whether 109 is a jurisdictional statute is a whole other can of
2  words.  I don't think Your Honor needs to get there because I
3  don't think on the face of the statute it addresses involuntary
4  petition.
5         THE COURT:  Okay.  Well, I'm not going to open the
6  can of worms too greatly, but I think in sort of practical
7  bankruptcy terms, 109 is in fact a jurisdictional statute in
8  the sense it's sort of that gate opening part of the bankruptcy
9  code.  It's plainly entitled, Who May be a Debtor.  And for
10 example, with regard to 13, it sets certain debt limits and
11 with regard to other sections, it says what kinds of entities
12 may be debtors.  I think Congress plainly intended these credit
13 counseling requirements to be part of Section 109 for that
14 purpose.
15         Having said that, that's about as far as I can go in
16 determining plainly what Congress meant.  I think with all due
17 respect to the U.S. Trustee's position, I think 109 is true of
18 many other sections of the new BAP CAPA statute is a good
19 example of how -- how shall I phrase this?  A sufficient lack
20 of attention to clarity creates opportunities for litigation
21 that drives up the cost of all manner of cases in bankruptcy
22 and this is just one such example.  I do in fact think 109(h)
23 is somewhat ambiguous in this regard.  I agree with both Mr.
24 Friedman and Mr. D'Auria that ultimately when you parse through
25 the statute, the controlling phrase, I think, to focus on, or

1  read as a whole, rather, let me put it this way, using the
2  entirety of the clauses there in that (h)(1), I think it most
3  properly understood that they're talking about a petition filed
4  by an individual, filed by an individual not filed against an
5  individual.  However, I think the statute is somewhat ambiguous
6  because there is 301 and 303 out there, and the utter lack of
7  any reference in 109 to either statute, I think creates this in
8  my view, unnecessary argument as to whether involuntary
9  debtors, individual -- whether individual debtors can have
10 involuntary petitions filed against them.
11         I think it's an elementary canon of statutory
12 construction that when you're looking at a statute you're
13 looking at the entirety of the statute, statutory section, and
14 then you place that statutory section within the context of the
15 larger statute itself.  I think when you do that, I think that
16 supports the notion that petitions against involuntary debtors
17 do not require involuntary debtors to have credit counseling as
18 a prerequisite to the cases going forward.  I say that in part
19 because I think again, if you read the section as I just
20 suggested to you, that you have to focus on the part of the
21 section that speaks about preceding the date of filing of the
22 petition by such individual.  If you focus on that it makes
23 sense in connection with Section 303, also if you focus on that
24 the rest, as Section 109(h) makes sense as Mr. D'Auria pointed
25 out clearly the focus of the credit counseling requirement is

1  focused on individual debtors who Congress perceived were
2  precipitously filing bankruptcy petitions.  That plainly would
3  not apply to involuntary petitioners, there's already sanctions
4  for precipitously filing involuntary petitions, so I think it's
5  an interesting argument but ultimately a very unpersuasive one.
6           Motion to dismiss denied.  You guys are going to have
7  to knock each other out with a little discovery.  You have not
8  filed an answer.  I forgot to look and see when one was due.
9  It's past due, but --
10          MR. LEVITT:  It was extended because of the motion,
11 Your Honor, under the rule.
12          THE COURT:  But I don't even know when it was due in
13 the first instance.  I forgot to look.
14          MR. FRIEDMAN:  Mr. Fagan was -- something like that,
15 so --
16          MR. LEVITT:  Your Honor, I don't have the statute in
17 front of me, but the filing of the motion to dismiss tolled the
18 time to file the answer.  But I can indicate to the Court that
19 I'll file an answer within 10 days.
20          THE COURT:  Indeed. But since you guys -- where I'm
21 really going is since I understand that with regard to venues
22 some discovery will be needed.  I'm assuming likewise after you
23 file an answer, there will be some discovery with respect to
24 the answer filed.  So I'm simply suggesting that since this is
25 going to turn into a contested proceeding, I think perhaps you

1  ought to confer with one another about producing a scheduling
2  order.  Okay?
3           MR. LEVITT:  Fine, Your Honor.
4           MR. FRIEDMAN:  That's fine, Your Honor.  Thank you.
5           THE COURT:  Thank you.
6                    * * * * *

### C E R T I F I C A T I O N

I, Johanna LiMato, court approved transcriber, certify that the foregoing is a correct transcript to the best of my ability from the official electronic sound recording of the proceedings in the above-entitled matter.

/s/ Johanna LiMato          Date:   September 14, 2006
**JOHANNA LiMATO**
**J&J COURT TRANSCRIBERS, INC.**